UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Docket No. 2:13-cr-00114-NT |
| | ) |
| MICHEL D'ANGELO, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR SENTENCE REDUCTION**

Before me is Defendant Michel D'Angelo's Amended Motion to Reduce Sentence ("**Def.'s Am. Mot.**") (ECF No. 310). For the reasons that follow, the Defendant's amended motion is **DENIED**.

**PROCEDURAL BACKGROUND**

On February 13, 2014, Mr. D'Angelo pleaded guilty to a one-count indictment charging him with bank robbery. Revised Presentence Investigation Report ("**PSR**") ¶¶ 2–4. On June 20, 2014, I sentenced him to a term of 180 months imprisonment and a three-year term of supervised release. Judgment (ECF No. 136).

In 2015, Mr. D'Angelo directly appealed the decision to the First Circuit seeking a reduction of sentence for acceptance of responsibility but was denied. *United States v. D'Angelo*, 802 F.3d 205, 206 (1st Cir. 2015). In 2018, Mr. D'Angelo sought habeas relief under 28 U.S.C. § 2255, and this, too, was denied. Order Affirming R. & R. of the Magistrate Judge (ECF No. 281). Then, in 2021, Mr. D'Angelo wrote to the court seeking relief under *Borden v. United States*, 141 S. Ct. 1817 (2021). Mot. for Relief (ECF No. 299). Construing this as a successive habeas petition without

authorization from the Court of Appeals, Magistrate Judge Nivison denied the motion, R. & R. (ECF No. 301), and I affirmed, Order Affirming R. & R. of Magistrate Judge (ECF No. 302).

Earlier this year, Mr. D'Angelo filed a *pro se* motion for a sentence reduction (ECF No. 304). After reviewing the motion, I appointed counsel to represent Mr. D'Angelo (ECF No. 307). Mr. D'Angelo's appointed counsel then filed the amended motion for a sentence reduction, which is before me now.

## ANALYSIS

Title 18, United States Code, Section 3582(c)(1)(A)—commonly known as the compassionate release statute—governs "[m]odification of an imposed term of imprisonment." Congress enacted the compassionate release statute to allow district courts to modify sentences of imprisonment upon finding that: (1) extraordinary and compelling reasons warrant modification, (2) the modification accords with the section 3553(a) sentencing factors, and (3) the modification is consistent with "applicable policy statements" of the Sentencing Guidelines. *See* 18 U.S.C. § 3582(c)(1)(A).[1] In 2018, Congress enacted the First Step Act which, among other things, amended section 3582 to allow inmates, in addition to the Director of the Bureau of Prisons ("**BOP**"), to bring motions for modification of sentence directly to

---

[1] A defendant must exhaust his administrative remedies by seeking release from the prison warden before he can avail himself of relief under the compassionate release law. 18 U.S.C. § 3582(c)(1)(A). Here, the Government acknowledges that Mr. D'Angelo has met the threshold requirement of administrative exhaustion because he requested release from the warden on January 13, 2022, and his request was denied. Government's Resp. to Def.'s Mot. for Compassionate Release 3 (ECF No. 323).

the district courts.² *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)).

The compassionate release statute does not itself define what constitutes an "extraordinary and compelling reason[ ]" justifying a sentence modification. *See United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021); 18 U.S.C. § 3582(c). The United States Sentencing Commission did flesh out the concept of "extraordinary and compelling" circumstances in the Commentary to its policy statement on sentence reductions, but that Commentary was last modified in November 2018, before Congress passed the First Step Act. U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1 (U.S. Sent'g Comm'n 2004)*; see United States v. Ruvalcaba*, 26 F.4th 14, 20 (1st Cir. 2022). In *Ruvalcaba*, the First Circuit explained that while the Sentencing Commission's Commentary still applies to motions brought by the Director of the BOP, "when adjudicating prisoner-initiated motions for compassionate release [district courts] have discretion, unconstrained by any policy statement currently in

---

² Prior to 2018, a motion for modification of sentence could only be brought by the Director of the Bureau of Prisons (the "**BOP**"). 18 U.S.C. § 3582(c)(1)(A) (2012) (amended 2018). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." 26 F.4th at 23.

The First Circuit has made clear that the "extraordinary and compelling reason" language in section 3582(c) is expansive. *Id.* at 25 (noting that rehabilitation is Congress's only "explicit limitation on what may comprise an extraordinary and compelling reason"). The First Circuit has also indicated that, at least until the Sentencing Commission updates its policy statement, district courts have the discretion to review prisoner-initiated motions holistically and may consider "any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." *Id.* at 28*; see United States v. Trenkler*, 47 F.4th 42, 48–50 (1st Cir. 2022) (describing the "holistic, any-complex-of-circumstances approach").

This does not mean that I have unbounded discretion in evaluating whether the Defendant has put forward an extraordinary and compelling reason justifying his release. A defendant's asserted justification for why a sentence reduction is warranted must truly be "extraordinary" and "compelling." *See Ruvalcaba*, 26 F.4th at 23. A reason is "extraordinary" if it "is beyond the mine-run either in fact or in degree." *Canales-Ramos*, 19 F.4th at 566. Meanwhile, a "compelling" reason is one "that is both powerful and convincing." *Id.* at 567.

I. **Extraordinary and Compelling Reasons**

In his briefing, the Defendant puts forward four reasons that he contends, in combination, provide an extraordinary and compelling reason justifying his release: (1) if he were sentenced today, he would receive a lower sentence because he would

4

not be classified as a career offender; (2) he has various mental health issues, as well as traumatic brain injuries; (3) he has taken significant steps at rehabilitating himself while in prison; and (4) due to his age, he is at a low risk of recidivating. Def.'s Aff. ¶¶ 10–15 (ECF No. 304); Def.'s Am. Mot. 4–9; Def.'s Suppl. Statement in Supp. of Mot. for Reduction of Sentence ("**Def.'s Suppl. Mem.**") 1–4 (ECF No. 322). I address these reasons in order, and then consider them holistically in the context of Mr. D'Angelo's individual circumstances. *See Trenkler*, 47 F.4th at 50.

### A. Career Offender Status

Mr. D'Angelo is correct that if the Sentencing Guidelines in effect today had been in effect in 2014, he would not have qualified as a career offender. When Mr. D'Angelo was originally sentenced, the parties did not dispute that he qualified as a "career offender" under the Sentencing Guidelines as a result of two prior convictions for "crime[s] of violence." PSR ¶ 27; *see also* U.S. Sent'g Guidelines Manual § 4B1.1. One of those convictions was for assaulting a police officer.[3] PSR ¶ 41. The law has changed since the time of Mr. D'Angelo's sentencing, and Mr. D'Angelo's conviction for assault on a police officer would no longer qualify as a crime of violence under the Sentencing Guidelines.[4] The Defendant acknowledges that his habeas petition

---

[3] The other offense was for criminal threatening with a dangerous weapon. PSR ¶ 37. This offense would still qualify as a crime of violence under the Sentencing Guidelines in effect today.

[4] At the time of Mr. D'Angelo's sentencing, the Sentencing Guidelines defined a "crime of violence" to include particular identified offenses, as well as two general types of criminal activity: (1) any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "**elements clause**") or (2) any felony "that presents a serious potential risk of physical injury to another" (the "**residual clause**"). U.S. Sent'g Guidelines Manual § 4B1.2(a) (U.S. Sent'g Comm'n 2014).

5

asserting the changed law was denied because he could not show that the change applied retroactively on collateral review.[5] Def.'s Am. Mot. 4 (citing *United States v. D'Angelo*, Case No. 21-1870 (1st Cir. Dec. 23, 2021) (ECF No. 303)).

The Government argues that "motions brought pursuant to 18 U.S.C. § 3582(c)(1)(A) are not an appropriate vehicle for mounting legal challenges to a defendant's conviction or sentence, because doing so would essentially displace

---

In *Borden v. United States*, 141 S. Ct. 1817 (2021), the Supreme Court addressed an identical definition for a "violent felony" under the Armed Career Criminal Act ("**ACCA**") to decide whether a predicate offense satisfied the elements clause. *Id.* at 1823 (citing 18 U.S.C. § 924(e)(2)(B)(i)). Using the categorical approach, the Court concluded that an offense that can be committed by reckless conduct does not necessarily require the "use of physical force against the person of another," and thus such an offense does not fall within ACCA's elements clause. *Id.* at 1826–27, 1833–34.

Mr. D'Angelo was convicted under a Maine statute that prohibits (in certain circumstances) intentionally, knowingly, or recklessly causing bodily injury to a law enforcement officer. 17-A M.R.S. § 752-A(1)(A). Accordingly, under *Borden,* the conviction would not have fit under the elements clause of the then-existing definition for a crime of violence, because, using a categorical analysis, an assault on a police officer can be committed without the use of physical force.

On habeas review, Judge Nivison noted that the conviction would also have counted under the residual clause of the crime of violence definition because it involved a serious potential risk of injury to another. R. & R. (ECF No. 271) at 10 ("[A] Maine conviction of assault on an officer, 17-A M.R.S. § 752-A(1)(B), qualifies as a predicate crime of violence under . . . the residual clause of the sentencing guidelines.") (citing *United States v. Gignac*, 119 F.3d 67, 69 (1st Cir. 1997) ("We agree with the district court that an assault on a prison guard by its very nature involves a serious potential risk of injury to another.")). But in *Johnson v. United States*, 576 U.S. 591, 597 (2015), the Supreme Court concluded that ACCA's residual clause was void for vagueness. In response to *Johnson,* the United States Sentencing Commission adopted an amendment eliminating the residual clause from the "crime of violence definition." *United States v. Frates*, 896 F.3d 93, 96 (1st Cir. 2018) (citing U.S. Sent'g Guidelines Manual supp. to app. C, Amend. 798). Four months after the amendment took effect, the Supreme Court decided *Beckles v. United States,* 137 S. Ct. 886, 890 (2017), which distinguished *Johnson* and determined that the residual clause to the crime of violence definition in the advisory guidelines was not amenable to a vagueness challenge. The Sentencing Commission did not restore the residual clause after *Beckles*. U.S. Sent'g Guidelines Manual § 4B1.2(a).

5   There is a circuit split on whether *Borden* applies retroactively on collateral review. *Compare United States v. Toki*, 23 F.4th 1277, 1281 (10th Cir. 2022) (finding that *Borden* does apply retroactively), *with In re Reaves*, No. 22-11925-F, 2022 WL 2952475, at *2zsx (11th Cir. July 8, 2022) ("*Borden* does not announce a new rule of constitutional law that applies retroactively on collateral review."). The First Circuit denied D'Angelo's habeas petition asserting *Borden* error because he "failed to demonstrate that the decision upon which he attempts to rely is a 'new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.' 28 U.S.C. § 2255(h)(2)). *D'Angelo v. United States*, No. 21-1870 (1st Cir. Dec. 23, 2021) (emphasis omitted) (ECF No. 303).

6

traditional habeas law." Government's Resp. to Def.'s Mot. for Compassionate Release ("**Gov't's Opp'n**") 8–9 (ECF No. 323). But, in *United States v. Trenkler,* the First Circuit rejected as unpersuasive the Government's contention that a "motion for compassionate release fails at the threshold question of whether it is a habeas petition in disguise . . . ." 47 F.4th at 49.[6] And it is clear from *United States v. Ruvalcaba,* that I may consider "any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." 26 F.4th at 28. I am directed to "determine on a case-by-case basis whether such changes in law predicated on a defendant's particular circumstances comprise an extraordinary and compelling reason and, thus, satisfy the standard for compassionate release . . . ." *Id.* at 28.

If Mr. D'Angelo had come before me today, he would not have qualified as a career offender, and he would have been sentenced under a lower guideline range.[7] Alone, that fact would not be enough to carry the day.[8] In *Trenkler*, the First Circuit

---

[6] To be fair, *Trenkler* was decided after the Government submitted its opposition.

[7] When I originally sentenced Mr. D'Angelo, because he qualified as a career offender, his adjusted offense level was boosted to a thirty-two and his criminal history category became a category VI. Sent'g Hr'g Tr. 36:19–37:4 (ECF No. 143). That resulted in a guideline range of 210 to 240 months. Sent'g Hr'g Tr. 37:5–8. However, based in part on Mr. D'Angelo's mental health issues and a reported brain injury, I varied downward by the equivalent of two points, putting Mr. D'Angelo in a range of 168 to 210 months. Sent'g Hr'g Tr. 57:14–22. Had he not qualified as a career offender, Mr. D'Angelo's adjusted offense level would have been a twenty-nine, his criminal history category would have been a category V, and his guideline range would have been 140 to 175 months. Sent'g Hr'g Tr. 36:19–37:2; U.S. Sent'g Guidelines Manual ch. 5 pt. A. Taking into account the same variance of two points that I used at sentencing, I would have been relying on a sentencing range of 120 to 150 months. U.S. Sent'g Guidelines Manual ch. 5 pt. A (U.S. Sent'g Comm'n 2014).

[8] Nor is Mr. D'Angelo's sentence so unusually long as to be an extraordinary or compelling reason for modification. Mr. D'Angelo was sentenced to 180 months for a federal robbery crime, well below the Guideline range of 210 to 240 months. The average sentence in 2014 for such crimes was 117 months based on an average Guideline minimum of 129 months; in 2021, the average sentence

recognized that "correct application of the 'extraordinary and compelling' standard for compassionate release naturally precludes classic post-conviction arguments, *without more*, from carrying such motions to success." 47 F.4th at 48 (emphasis added). But Mr. D'Angelo offers more. I turn next to consider this in the context of the other reasons Mr. D'Angelo believes are extraordinary and compelling.

### B.     Mental Health and Brain Injuries

The Defendant cites his mental health and "multiple traumatic brain injuries," as additional support for a finding of extraordinary and compelling reasons for a modification of his sentence. Def.'s Am. Mot. 9. Mr. D'Angelo's mental health struggles are well-documented and longstanding. They were discussed extensively in the PSR and at sentencing. *See* PSR ¶¶ 81, 83–86, 88–101; Sent'g Hr'g Tr. 22:7–23:3; 39:7–20; 42:5–13; 44:1–16; 45:16–46:1; 53:4–54:12; 57:14–22 (ECF No. 143). And "his mental health issues and his brain trauma" factored significantly into my decision to give Mr. D'Angelo a variant sentence. Sent'g Hr'g Tr. 22:6–24; 57:14–22. Because these issues have already factored into my sentencing decision, they are not

---

was 105 months based on an average Guideline minimum of 122 months. U.S. Sent'g Comm'n, Federal Robbery: Prevalence, Trends, and Factors in Sentencing 23 (2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220818_Robbery.pdf. While Mr. D'Angelo's sentence is longer than average, it is not extraordinary or compelling considering that his Guideline range was also significantly higher than average based on his criminal history. Additionally, while I gave him a downward variance, 53.3% of federal robbery offenders were sentenced within or above their Guideline range in 2014, and 42.9% of offenders were sentenced within or above their Guideline range in 2021. *Id.* at 22. Overall, Mr. D'Angelo's sentence does not rise to the level of extraordinary or compelling when compared to other similarly situated offenders. *See, e.g.*, *United States v. Vigneau*, 473 F. Supp. 3d 31, 36–39 (D.R.I. 2020) (finding extraordinary and compelling reasons for release existed where the defendant was serving a mandatory sentence from 1998 of 365 months when the current national average for the offense was 27 months); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *2 (D. Neb. Nov. 14, 2019) (finding it extraordinary and compelling that the 2004-sentenced defendant was facing a period of imprisonment forty years longer than he would if he were to be sentenced today).

"extraordinary" or "compelling" in the context of a motion for a sentencing modification. *See United States v. Williams*, No. 2:17-cr-00417-DAK, 2020 WL 806026, at *3 (D. Utah Feb. 18, 2020) ("[E]ach of the reasons that Defendant claims justifies a sentence reduction were all reasonably foreseeable at the time of his sentencing and are therefore insufficient to merit a sentence reduction."); *United States v. Lake*, No. 5:16-076-DCR, 2019 WL 4143293, at *4 (E.D. Ky. Aug. 30, 2019) ("The purpose of compassionate release is to reduce a term of imprisonment for extraordinary or compelling circumstances that could not have reasonably been foreseen at the time of sentencing.").

One thing that the Defendant has raised that I did not consider at the time of sentencing is his claim that the BOP has often failed to treat his mental health conditions adequately or at all. *See* Def.'s Suppl. Mem. 1–4. According to his Mental Health Transfer Summary, Mr. D'Angelo currently suffers from antisocial personality disorder, borderline personality disorder, opioid use disorder, and cannabis use disorder, in addition to his long history of other mental health challenges.[9] Mental Health Transfer Summ. 1–2 (ECF No. 322-2). The Defendant argues that the failure to treat these properly has been a cause of numerous mental health crises while in the BOP's custody. Def.'s Suppl. Mem. 1–4. In particular, he has engaged in self-mutilation twelve times in the past seven years, sometimes

---

[9] Mr. D'Angelo argues that he has not been seen for these conditions since January 29, 2021. Def.'s Am. Mot. 9. But Mr. D'Angelo's opioid use disorder is identified as being in sustained remission, Def.'s Am. Mot. Ex. 2B (ECF No. 310-4); he has received general mental health services since then, *see* Mental Health Transfer Summ. (ECF No. 322-2); and he does not identify any treatments for specific conditions that he is not being provided.

9

cutting himself so severely as to require emergency treatment at an outside hospital. Def.'s Suppl. Mem. 1; Incident Reports (ECF No. 322-1). At the facility where he is currently housed, he alleges that the BOP has failed to provide him with the proper dosage of medication despite his and his doctor's requests. Def.'s Suppl. Mem. 3; Mental Health Transfer Summ. 1.

The Government contends that the fact that Mr. D'Angelo's mental health treatment has only been partially effective is not extraordinary or compelling. Gov't's Opp'n 13–15. And Mr. D'Angelo has made some noteworthy progress in the BOP's care. For example, his May 2022 Mental Health Transfer Summary states that he "has a wealth of knowledge as it relates to [dialectical behavior therapy ("**DBT**")] skills." Mental Health Transfer Summ. 2. There is evidence that these skills are working as his self-harming has become less frequent over the years—eleven of the incidents occurred in the period from August 2015 to March 2017, the other two occurred in spring 2021, and none have happened in his current placement. Incident Reports; Mental Health Transfer Summ. 2. In this placement, it does appear that the BOP has taken steps to try to improve Mr. D'Angelo's care. And Mr. D'Angelo's psychologist's most recent report recommends that he be transferred to a Dual Diagnosis Residential Drug Abuse Program ("**DDRDAP**") that specializes in treatment for inmates who have been diagnosed with a substance use disorder as well as a mental health disorder. Mental Health Transfer Summ. 3.

It is also worth noting that some of Mr. D'Angelo's actions have interfered with the success of treatment. In his current facility, Mr. D'Angelo seeks a higher dose of

10

Buspirone, but he was previously not compliant with this medication, so he could not be re-prescribed it for a period of time. Mental Health Transfer Summ. 1. He has now stopped using the medication because he believes the low dosage is ineffective. Mental Health Transfer Summ. 1. His usage of synthetic cannabis has also interfered with his ability to succeed in the Challenge Program, and he was expelled from that program this year after being found in possession of a SIM card. Mental Health Transfer Summ. 2–3; Inmate Profile 2 (ECF No. 310-5). The most recent medical summary also notes that "[m]ost displays of emotional dysregulation have been secondary to perceived beliefs that his needs are not being met, needs that he believes he is entitled to." Mental Health Transfer Summ. 2.

Compassionate release motions involving inadequate medical care are similar to Eighth Amendment claims for deliberate indifference to a prisoner's serious medical needs. *United States v. Verasawmi*, No. 17-254, 2022 WL 2763518, at *8 (D.N.J. July 15, 2022); *see United States v. Dimasi*, 220 F. Supp. 3d 173, 193–94 (D. Mass. 2016) (considering a prisoner's compassionate release motion involving inadequate medical care using Eighth Amendment standards). The Eighth Amendment guarantees BOP inmates adequate medical care for serious medical conditions, but "[i]t does not require that the Bureau provide optimal medical care or care of an inmate's choosing." *Dimasi*, 220 F. Supp. at 194. Instead, courts considering challenges to BOP medical treatment in the compassionate release context have limited their inquiry to whether the treatment is inadequate or the BOP is indifferent to the defendant's serious medical issues. *See, e.g.*, *United States v. Gates*, No. 18-

10374-LTS, 2020 WL 2747851, at *2 (D. Mass. May 27, 2020) (noting that while the BOP must provide adequate medical care, "the specific medical treatment required or appropriate for [the defendant] and the response of the [BOP]" are not matters over which courts have jurisdiction when considering motions for compassionate release); *United States v. Martinez*, No. 10-cr-233S (1), 2022 WL 1089671, at *3 (W.D.N.Y. Apr. 12, 2022) ("Whether there has been negligence, misdiagnosis, or simple disagreement over proper treatment, nothing in the record demonstrates that [the defendant] is receiving medical treatment so inadequate as to warrant his release, particularly given the severity of his criminal conduct and the length of the sentence imposed."); *United States v. Beck*, 425 F. Supp. 3d 573, 580–84 (M.D.N.C. 2019) (finding extraordinary and compelling reasons for releasing prisoner after the BOP's "gross mismanagement" of medical care involving delaying breast cancer treatments for months); *United States v. Almontes*, No. 3:05-58 (SRU), 2020 WL 1812713, at *6–7 (D. Conn. Apr. 9, 2020) (finding extraordinary and compelling circumstances when the BOP was indifferent to prisoner's serious spinal issue by delaying treatment and surgery for years).

Overall, the Defendant's mental health diagnoses are serious, and the BOP must provide adequate medical care. Based on the record before me, it appears that the BOP's recent care has been adequate. Mr. D'Angelo has shown progress in his DBT skills, and he has not self-harmed since being transferred to his current placement. There, he has attended weekly DBT skills groups, completed treatment workbooks, and used coloring as an adaptive coping method, and he is being

recommended for a transfer to a DDRDAP. Mental Health Transfer Summ. 2–3. While Mr. D'Angelo's treatment may have been imperfect, it alone does not rise to the level of an extraordinary and compelling reason for compassionate release, although I consider it as part of the complex of circumstances of Mr. D'Angelo's case.

### C.    Rehabilitation

The Defendant further contends that the steps he has taken towards rehabilitating himself constitute extraordinary and compelling reasons for a modification of his sentence. Def.'s Aff. ¶ 15. He has completed the Steps Toward Awareness, Growth, and Emotional Strength (STAGES) Program and "had the potential to be quite successful in the [Challenge Program]" before he was removed earlier this year. Def.'s Aff. ¶ 15; Mental Health Transfer Summ. 2. In addition, he has completed numerous Adult Continuing Education courses, some of which address life skills, including resume writing, finance, and job interviewing. Inmate Educ. Data Tr. (ECF No. 310-7). Mr. D'Angelo writes that he has "a new perspective on life," and wants only to succeed and care for his mother, children, and loved ones. Def.'s Suppl. Mem. 3, 4–5. In his DBT skills group, the Defendant "has been a go-to peer for other Care3-MH inmates as it relates to the content," and he hopes to be a mentor for at-risk teens upon his release. Mental Health Transfer Summ. 2; Def.'s Suppl. Mem. 3–5.

Although these rehabilitative efforts are commendable, there remains room for improvement. Mr. D'Angelo has had continued disciplinary problems in prison, including this year, when he was removed from the Challenge Program for possession

13

of an unauthorized item. Mental Health Transfer Summ. 2–3; *see* Disciplinary R. (ECF No. 310-8). And his Individualized Needs Plan still recommends completion of an anger/mood management course and finds that "[h]e has not made any recent progress towards FSA programming and has not maintained clear conduct." Individualized Needs Plan 2–3 (ECF No. 310-6).

Like non-retroactive changes in the law, rehabilitation alone is not a sufficient basis for finding that extraordinary and compelling circumstances exist. *See Ruvalcaba*, 26 F.4th at 25 (citing 28 U.S.C. § 994(t)); *see United States v. Sepulveda*, 34 F.4th 71, 76–77 (1st Cir. 2022) (finding that prisoner's rehabilitative efforts over twenty-five years were not by themselves an extraordinary and compelling reason for granting compassionate release); *United States v. Stone*, No. 1:08-cr-00006-JAW, 2021 WL 5146183, at *8 (D. Me. Nov. 4, 2021) (finding rehabilitative efforts including an 8000-hour electrician program, six years of experience in an electrical shop, HVAC training, and leather crafting classes were not by themselves extraordinary and compelling). Mr. D'Angelo's efforts at rehabilitation, while commendable, are not "beyond the mine-run in fact or degree" when compared to other cases. But I consider them as part of the complex of circumstances raised by Mr. D'Angelo.

### D. Age and Risk of Recidivism

The Defendant also argues that he is at a low risk of recidivating because he is currently forty-two years old. Def.'s Aff. ¶¶ 12–14. Taking this as true, this is not "extraordinary and compelling." Mr. D'Angelo's age can hardly be considered advanced. The Sentencing Guidelines, while non-binding, advise that a defendant's

age can be an extraordinary or compelling reason if he "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S. Sent'g Guidelines Manual § 1B1.13 n.1(B). *See also* 18 U.S.C. § 3582(c)(1)(A)(ii) (providing for an alternative path to receive a sentence reduction outside the "extraordinary and compelling" language for defendants aged seventy and older who have served at least thirty years in prison). The facts that Mr. D'Angelo is now forty-two and recidivism rates decline with age, however, are not extraordinary and compelling reasons for release, and I give them little weight. *See, e.g.*, *United States v. Black*, No. 2:07-cr-00029-GZS, 2022 WL 1487035, at *1–2 (D. Me. May 11, 2022) (denying sentence reduction for fifty-one-year-old defendant).

      E.    **The Complex of Circumstances**

Viewed separately, none of the four reasons Mr. D'Angelo discusses are "extraordinary and compelling." Viewed holistically, however, Mr. D'Angelo comes closer to presenting extraordinary and compelling circumstances. But I need not decide whether he has cleared the extraordinary and compelling reasons hurdle, because Mr. D'Angelo stumbles at the section 3553(a) factors, which must also be considered in the compassionate release analysis.

## II.     The Section 3553(a) Factors

Under section 3582(c), decisions on motions for compassionate release must be assessed "after considering the factors set forth in section 3553(a)[10] to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The section 3553(a) factor that concerns me the most is the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). To grant Mr. D'Angelo's motion, I need reasonable assurance that Mr. D'Angelo would not pose a danger to the community if released. *See United States v. West*, No. 2:15-cr-00168-NT-003, 2022 WL 911256, at *1 (D. Me. Mar. 29, 2022).

The conduct underlying Mr. D'Angelo's conviction was violent. He attempted to rob a bank, and, in doing so, he threatened to set off a bomb and possessed a screwdriver as a weapon. PSR ¶¶ 8, 22. In addition, he had his girlfriend, then twenty-one years-old, drive him to the bank and place fake 911 calls to divert law enforcement from the robbery. PSR ¶¶ 8–11; Compl. Synopsis (ECF No. 4). And this was but one episode in his criminal history, which includes theft, burglary, disorderly

---

[10]     Section 3553(a) directs the court to consider seven factors in sentencing:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the applicable Guidelines sections]; (5) any pertinent policy statement (A) issued by the Sentencing Commission . . . (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense.
18 U.S.C. § 3553(a).

16

conduct, assault, criminal threatening, and trafficking in prison contraband. PSR ¶¶ 29–44. As I remarked at sentencing, Mr. D'Angelo's life since age sixteen "has just been one scrape with the law after another." Sent'g Hr'g Tr. 56:19–20.

Mr. D'Angelo's record in prison does not bode well for him either. During his period of incarceration, he has been punished for at least eighteen infractions, including an assault with serious injury, two assaults without serious injury, fighting, threatening bodily harm, possessing a dangerous weapon, refusing to obey an order, failing to follow safety regulations, being in an unauthorized area, possessing an unauthorized item, introducing drugs/alcohol, and being insolent to staff. Disciplinary R. 1–7. To his credit, Mr. D'Angelo acknowledges these incidents, and he argues that he has not been involved in any incidents since 2020. Def.'s Am. Mot. 10. While it does appear that Mr. D'Angelo's conduct has improved in the past two years, he was recently sanctioned for possession of an unauthorized item in February of 2022. Mental Health Transfer Summ. 3.

Many of Mr. D'Angelo's crimes and prison infractions are likely attributable to his mental health struggles. As Mr. D'Angelo himself acknowledges, his brain injuries "have dramatically altered his impulse control." Def.'s Am. Mot. 9. While I am sympathetic about Mr. D'Angelo's mental health conditions, those very conditions impact his dangerousness. I thus continue to harbor grave doubts about his ability to stay within the bounds of the law. I simply cannot conclude that, if released, Mr. D'Angelo would no longer pose a danger to the community.

Sentencing is one of the most difficult aspects of judging. And now compassionate release requests have added to that load, forcing judges to re-evaluate, after many years and from afar, whether extraordinary and compelling circumstances exist to modify a sentence and whether release is appropriate under the section 3553(a) factors. As hard as it is to write an order denying compassionate release, it must be far more difficult for an inmate to read such an order. I commend Mr. D'Angelo for his rehabilitative efforts, I encourage him to keep his record clean going forward, and I strongly encourage the Bureau of Prisons to provide Mr. D'Angelo with the mental health treatment that he needs to be able to reenter the community safely.

## CONCLUSION

While Mr. D'Angelo comes close to establishing extraordinary and compelling reasons for compassionate release, because I consider Mr. D'Angelo to remain a danger to the community, the motion for compassionate release (ECF No. 310) is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: October 17, 2022